(No. 49118.—

THE PEOPLE *ex rel.* SAMUEL G. HARROD III, Judge, Petitioner, v. THE ILLINOIS COURTS COMMISSION *et al.,* Respondents.

*Opinion filed Nov. 30, 1977.—Rehearing denied Jan. 26, 1978.*

446

448

· .William J. Harte, Ltd., of Chicago, and Jerome Mirza & Associates, of Bloomington, and Samuel G. Harrod, Jr., of Eureka, for petitioner.

Milton I. Shadur and Geraldine Soat Brown, of Chicago (Sharon Baldwin, of Devoe, Shadur & Krupp, of counsel), for respondents.

Francis D. Morrissey and Sidney Z. Karasik, of

Chicago, for *amicus curiae* Illinois Judges Association.

Leonard M. Ring, of Chicago, and Howard H. Braverman, of Springfield, for *amicus curiae* Illinois State Bar Association.

John F. McCarthy, of Chicago (McCarthy & Levin, of counsel), for *amicus curiae* Chicago Bar Association.

Arnold B. Kanter, Charles H. Kennedy, Robert G. Byron, and John R. Schmidt, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

MR. JUSTICE MORAN delivered the opinion of the court:

This is a petition for an original writ of *mandamus* filed with leave of this court by petitioner, Samuel G. Harrod III, a judge of the Eleventh Judicial Circuit, against respondents, members of the Illinois Courts Commission (Commission), praying that the respondents be directed to expunge an order they entered which suspended petitioner from his judicial duties for one month without pay.

A disciplinary action was initiated by a complaint filed with the Commission by the Illinois Judicial Inquiry Board (Board). A hearing was held, and the Commission filed its final order on December 3, 1976. On December 13, 1976, the petitioner filed a motion for a rehearing and for a stay of the suspension order for 60 days, pending the filing of an action in this court. Petitioner, however, commenced serving his suspended term on December 15, pursuant to the Commission's order. On December 20, 1976, petitioner here filed a petition for leave to file for an original writ of prohibition, or, alternatively, for a writ of *mandamus* or for a writ of *certiorari.* On January 12, 1977, the Commission denied petitioner's motion for rehearing and, on January 14, 1977, he completed serving his period of suspension. We allowed petitioner leave to file for an original writ of *mandamus.* Leave was also

granted for the filing of *amicus curiae* briefs by the Illinois State Bar Association, the Chicago Bar Association and the Illinois Judges Association on behalf of the petitioner, and by the Chicago Council of Lawyers on behalf of the Commission. The Board was granted leave to join in the action as an intervenor.

The judicial article of the 1970 Constitution provides, in part:

> "The Commission shall have authority after notice and public hearing, (1) to remove from office, suspend without pay, censure or reprimand a Judge or Associate Judge for willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute \*\*\*. Ill. Const. 1970, art. VI, sec. 15(e).

The complaint filed against petitioner charged him with willful misconduct in office, conduct prejudicial to the administration of justice, and conduct that brought the judicial office into disrepute. Specifically, it charged that petitioner, in sentencing male defendants, would, from time to time, in addition to imposing the payment of a fine and costs, order the defendants to obtain a haircut and to appear again in court for observation. Further, petitioner was charged with ordering persons placed on probation to surrender their driver's license to the clerk of the court and in return receive a card, which was to be carried with them at all times, identifying them as probationers. Petitioner also was charged with entering other unspecified sentences without authority of law. It was alleged that, in entering these sentences, the petitioner had willfully disregarded and had deliberately refused to follow the law, thereby repeatedly violating Supreme Court Rule 61(c)(18), which provides:

> "In imposing sentence, a judge should follow the law and should not compel persons brought before him to submit to some act or discipline without authority of law,

whether or not he may think it would have a beneficial corrective influence. He should endeavor to conform to a reasonable standard of punishment and should not seek popularity or publicity either by exceptional severity or by undue leniency." 58 Ill. 2d R. 61(c)(18).

At the petitioner's request, the Board filed a bill of particulars. In addition to enumerating the sentencing orders set forth in the complaint, the bill cited three cases in which petitioner ordered defendants to collect discarded bottles and cans along the roadway as a sentence for convictions involving the illegal transportation of alcohol. The bill also cited two cases which did not involve the issuance of an order upon conviction. In People v. Whelan, No. 75—TR—1629, as part of an order requiring the defendant to appear in court and to show cause why his probation should not be revoked, the petitioner ordered the defendant to obtain a short haircut. In People v. Micheletti, No. 76—TR—2306, petitioner ordered the defendant, charged with driving while intoxicated and driving with a suspended or revoked license, to be held without bail on the grounds that, within a two-month period, he had twice been released on bail on identical charges and was still awaiting trial thereon. (Prior to the hearing before the Commission, petitioner stipulated that, in addition to the cases cited in the bill, there were 26 "haircut," 15 "driver's license," and 5 "bottle and can" sentencing orders.)

Petitioner filed an amended answer admitting the alleged facts, but denied the allegation that the orders were entered without authority of law. He moved to dismiss the complaint on the grounds that the Commission was without jurisdiction.

Petitioner and the Board thereafter submitted briefs to the Commission on the jurisdictional issue. Petitioner contended that the conditions ordered as part of either probation or conditional discharge were premised on his

interpretation of the authority granted him pursuant to section 5—6—3(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b)), which provides, in part:

> "(a) The conditions of probation and of conditional discharge shall be that the person:
>> (1) not violate any criminal statute of any jurisdiction; and
>> (2) make a report to and appear in person before such person or agency as directed by the court.
>
> (b) The Court may *in addition to other conditions* require that the person: \*\*\* [the section thereafter sets forth 10 other permissible conditions]." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—6—3(a) and (b).)

At the time the complaint was filed, no appellate court had judicially interpreted the meaning of the phrase "in addition to other conditions." Petitioner argued that, based on his literal interpretation of these words, a court is permitted, in the exercise of its judicial discretion, to impose conditions other than those specifically enumerated. He contended that, at most, his orders were the result of an erroneous interpretation of the statute, appealable through the normal appellate process, and, therefore, not subject to a disciplinary action. With respect to the Micheletti case, petitioner stated that his refusal to grant bail was premised on the authority of *People ex rel. Hemingway v. Elrod* (1975), 60 Ill. 2d 74.

It was also argued that the Commission was without jurisdiction to entertain an action which involved the actual exercise of judicial discretion, especially in cases, such as this, where the exercise of that discretion involved a statute which had never before been interpreted by an appellate court and which was, at the time, the subject of a pending appeal. See *People v. Dunn* (1976), 43 Ill. App. 3d 94, a case involving one of the petitioner's haircut orders.

The Board, on the other hand, argued that the Commission had jurisdiction to discipline any misconduct which it found to be "willful" or "prejudicial to the administration of justice" or that "brings the judicial office into disrepute." The Board contended that petitioner's haircut orders were without authority of law in that they were imposed as punishment to remedy what petitioner considered to be the defendants' antisocial attitudes. The Board rejected petitioner's interpretation of section 5—6—3(b) and offered its own. Under its first construction, the Board argued that the word "other" simply referred to the two mandatory conditions set forth in paragraph (a), making the 10 permissible conditions additional to the two mandatory conditions. Under the alternative construction, the Board argued that the phrase "other conditions" meant conditions additional to the two mandatory and 10 permissive conditions, but of the same type as the 10 itemized conditions and directly related to the offenses involved. Pursuant to these interpretations, the Board contended that none of the petitioner's orders were issued with the authority of law. Finally, the Board argued that the mere fact that the orders were appealable did not prevent the Commission from entertaining the complaint, for, in some instances, the manner in which petitioner had enforced the haircut orders actually thwarted a meaningful appeal.

Following the filing of briefs, the Commission conducted a separate hearing on the jurisdictional question, but deferred its ruling pending the hearing of the evidence. In its final order, the Commission indicated that it recognized the importance of maintaining an independent judiciary, that the Commission was not a court of review, and that the appellate or supreme court might not agree with its decision as to a specific order or judgment. It held, however, that the mere fact the orders were appealable should not deprive it of jurisdiction, for many serious

injustices can occur which the right of appeal cannot cure. The Commission concluded that it had jurisdiction to entertain a complaint based on orders which were subject to appellate review, when, as here, it determines that a gross abuse of judicial power had been demonstrated.

The Commission ordered dismissed the charge based upon the Micheletti case, finding it did not merit the imposition of discipline.

In considering petitioner's argument that his orders were premised on the authority granted him pursuant to section 5—6—3(b) of the Unified Code of Corrections, the Commission, at the outset, rejected both the Board's and the petitioner's interpretations of that section. Without citing *People v. Dunn,* which at that time had been decided, the Commission found, based on its own "sensible construction," that section 5—6—3(b) permitted the imposition of conditions other than those particularly enumerated, but that such additional conditions had to be directed toward rehabilitation, be reasonably related to the offense for which the probation was imposed, and not be unduly restrictive of personal liberties. In *Dunn,* the court held that other conditions were permitted under section 5—6—3(b), but such conditions had to be related to the crime charged. The court did not hold, as the Commission did, that the conditions had to be directed toward rehabilitation and not be unduly restrictive of personal liberties.

After declaring what the law was by its interpretation of the section, the Commission evaluated the evidence and dismissed the charges involving the "bottle-and-can" orders, but found the "haircut" and "driver's license" orders to be impermissible and without authority of law. It, therefore, found the charges of the complaint to have been proved, concluding that petitioner was "guilty of repeated violations of Supreme Court Rule 61(c)(18), as well as of conduct prejudicial to the administration of

justice and conduct that brings the judicial office into disrepute." One of the Commission's five members dissented. The dissent opined the Commission was without jurisdiction in that the statute in question was subject to various interpretations, that the orders did involve the petitioner's judgment, which was subject to review by appeal, and that the orders complained of did not, without more, constitute willful misconduct in office.

We will first consider the Board's contention that this court is without jurisdiction to decide this action. It argues that the Commission's actions are not reviewable inasmuch as article VI, section 15(f), of the 1970 Constitution specifically provides that the Commission's decision shall be final. (Ill. Const. 1970, art. VI, sec. 15(f).) Presumably, it contends that only the Commission can interpret, define and determine the scope of its own authority.

This is not an action to determine if the Commission's evidentiary rulings were in error or if its order was against the manifest weight of the evidence. What is sought here is a determination of the scope of the Commission's constitutional authority and a determination of whether the Commission, in fact, exceeded that authority.

To suggest that only the Commission can interpret and determine the scope of its own authority is to imply that this court is without the power to determine whether the constitution's grants of or limitations of authority have been exceeded. Such an implication must be totally rejected.

Under the 1970 Constitution, the powers of the government in this State are lodged in three distinct departments: legislative, executive and judicial. (Ill. Const. 1970, art. II, sec. 1.) This court derives its authority and jurisdiction from sections 1 and 4 of the judicial article. (Ill. Const. 1970, art. VI, secs. 1, 4.) Section 1 of article VI provides that all of the judicial power in this State is vested in a supreme, appellate and circuit court.

Section 4 of article VI provides, *inter alia*, that this court may exercise original jurisdiction in cases relating to *mandamus*. The Commission also derives its authority from the Constitution, but it is not a coequal branch of government, nor is it a court within the meaning of the judicial article.

It is the function and duty of this court to act as the final arbiter of the Constitution. As recognized in *People ex rel. Bruce v. Dunne* (1913), 258 Ill. 441, 453:

> "It was deemed essential to the existence of the government that there should be some department authorized to construe [the Constitution], and determine, when called upon in some form known to the law, whether its limits have been disregarded. That duty rests upon the courts, and to the exercise of that function this court has always strictly limited itself."

(See also *Haller Sign Works v. Physical Culture Training School* (1911), 249 Ill. 436, 440-41; *People ex rel. Billings v. Bissell* (1857), 19 Ill. 229. As applied, see, *e.g., Buettell v. Walker* (1974), 59 Ill. 2d 146.) This court, therefore, has both the authority and responsibility to determine whether the Commission's acts were beyond its constitutional grant of authority and, if this court so finds, it must declare such acts invalid.

The Board relies on *Briscoe v. Bell* (1977), 432 U.S. 404, 53 L. Ed. 2d 439, 97 S. Ct. 2428, for the proposition that where a provision specifies that a governing unit's findings shall be final, no judicial review of any kind can be had.

In *Briscoe,* the petitioners, the Governor and Secretary of the State of Texas, filed suit against the Attorney General of the United States and the Director of the Census, seeking to restrain them from publishing their determination that Texas was covered by and subject to the 1975 amendments of the Voting Rights Act of 1965

(42 U.S.C. sec. 1973 *et seq.* (Supp. 1975)). Specifically, the petitioners challenged the manner in which the respondents applied and interpreted the statutory criteria to the facts before them. (432 U.S. 404, 407 n.6, 53 L. Ed. 2d 439, 443 n.6, 97 S. Ct. 2428, 2430 n.6.) Section 4(b) of the Voting Rights Act provided: "A determination or certification of the Attorney General or of the Director of the Census under this section \*\*\* shall not be reviewable in any court \*\*\*." (42 U.S.C. sec. 1973b(b) (1970).) The Supreme Court, noting that in the proceedings below the petitioners disclaimed any constitutional challenge to the Act, determined that the sole issue before the court was the question of the Federal court's jurisdiction to review respondents' findings which were based on criteria within the statute. The Supreme Court specifically reserved its opinion on the question of whether section 4(b) precluded review of respondents' determinations based on criteria not specified in the statute. (432 U.S. 404, 413-14 n.13, 53 L. Ed. 2d 439, 446 n.13, 97 S. Ct. 2428, 2433-34 n.13.) After analyzing Congress' intent and noting that a limited review procedure was provided for by statute, the Supreme Court held that section 4(b)'s preclusion clause prohibited any judicial review of the respondents' determination made pursuant to the statute. 432 U.S. 404, 413, 53 L. Ed. 2d 439, 446, 97 S. Ct. 2428, 2433.

We have no disagreement with the Supreme Court's reasoning or conclusion as applied to the facts in *Briscoe,* for there the petitioners sought to challenge the correctness of the respondents' determinations. Here, unlike *Briscoe,* we are not concerned with the correctness of the Commission's determination but with the Commission's constitutional authority to act.

An issue related to that presented here was raised in *Halleck v. Berliner* (D.D.C. 1977), 427 F. Supp. 1225. There, the plaintiff, a judge of the Superior Court of the

District of Columbia, filed an action seeking to enjoin disciplinary proceedings pending before the District of Columbia Commission on Judicial Disabilities and Tenure (D.C. Commission). The plaintiff challenged, among other things, the constitutionality of the disciplinary grounds set forth in the statute and the scope of the D.C. Commission's disciplinary powers.

Pursuant to the District of Columbia Court Reform and Criminal Procedure Act of 1970 (District of Columbia Code, sec. 11—1521 *et seq.* (1973)), the D.C. Commission is empowered to investigate complaints, conduct hearings, and suspend, retire, or remove judges of the District of Columbia. Any judge can be removed for willful misconduct in office, willful and persistent failure to perform duties, or any other conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute. (D.C. Code, sec. 11—1526(2) (1973).) The Act further provides that any judge aggrieved by an order filed by the D.C. Commission can appeal that decision to a special court consisting of three Federal judges appointed by the Chief Justice of the United States. Section 11—1529(c) provides that "[t]he special court shall review the order of the Commission appealed from and, to the extent necessary to decision and when presented, shall decide all relevant questions of law and interpret constitutional and statutory provisions." Section 11—1529(f) specifically provides that the "decisions of the special court shall be final and conclusive."

Despite the above provisions, that court, after holding that it had authority to entertain the plaintiff's challenge, resolved the issues adversely to the plaintiff. On motion to reconsider and amend the judgment, the plaintiff argued that the nonreviewability provision of section 11—1529(f) was unconstitutional in that it imposed an impermissible limitation on the appellate jurisdiction of the United States Supreme Court. The court held that, presuming the

issue was ripe for adjudication, section 11—1529(f) did not bar Supreme Court review of constitutional issues arising out of the disciplinary proceedings. The court reasoned:

"The language of section 11—1529(f) merely states that decisions of the special court are 'final and conclusive'. While the statute does not expressly provide for direct appeal to the Supreme Court or for review by writ of certiorari, *** this court does not believe that section 11—1529(f) should be construed as an attempt to preclude Supreme Court review of decisions of the special court with respect to constitutional questions. The words 'final and conclusive' do not mean that the Supreme Court cannot issue an appropriate writ to bring before the Court a decision of the special court. *** The Supreme Court is not powerless to determine the scope of its own jurisdiction." *Halleck v. Berliner* (D.D.C. 1977), 427 F. Supp. 1225, 1251.

We find the reasoning in *Halleck* to be persuasive and applicable to the issue presented here. As already noted, we are not concerned with the correctness of the Commission's determination, but with the Commission's constitutional authority to act. Our review, therefore, does not contravene the constitutional mandate regarding the finality of the Commission's decisions.

The Board, however, asserts that a writ of *mandamus* should not lie against the Commission because the Commission is a constitutionally created entity, and is not, by definition within the meaning of the judicial article, an inferior court. The mere fact that the Commission is a constitutionally created office does not prevent this court from issuing an original writ of *mandamus* against it. Under appropriate circumstances this court has issued writs of *mandamus* against other constitutional offices. (*E.g., People ex rel. Scott v. Kerner* (1965), 32 Ill. 2d 539;

*People ex rel. Sellers v. Brady* (1914), 262 Ill. 578; *People ex rel. Akin v. Rose* (1897), 167 Ill. 147.) *Mandamus* is not simply an adjunct to our appellate supervisory or administrative authority over lower courts. The fact therefore, that the Commission was created by the 1970 Constitution, and is not, by definition, an inferior court within the judicial article, will not prevent the issuance of an original writ of *mandamus.*

The Board finally argues that *mandamus* cannot be used as a substitute for an appeal where, as here, no appeal is allowed.

The Board, however, in its brief, concedes, and cases indicate, that *mandamus* may be used to expunge a void order entered by a tribunal without jurisdiction. (*E.g., People ex rel. Ward v. Salter* (1963), 28 Ill. 2d 612, 615-16; *People ex rel. Bradley v. McAuliffe* (1962), 24 Ill. 2d 75, 78; *People ex rel. Illinois Highway Transportation Co. v. Biggs* (1949), 402 Ill. 401, 408; *People ex rel. Elmore v. Allman* (1943), 382 Ill. 156, 164.) Accordingly, we conclude that *mandamus* is a proper remedy, and we therefore proceed to the merits of the case.

Petitioner contends that the Commission was without authority to entertain the complaint in that only conduct which violates this court's rules governing judicial conduct may be the subject of a complaint. To the extent the Board charged him with conduct other than that which violates Rule 61(c)(18), he asserts that the Commission's order is void.

The Board initially asserts that this issue is not before the court inasmuch as petitioner was specifically charged with violating Rule 61(c)(18). As earlier noted, however, the Whelan and Micheletti cases concerned orders which did not involve the entry of sentences. Consequently, we believe the issue raised by petitioner is properly before us.

Section 13(a) of the judicial article states that "[t]he Supreme Court shall adopt rules of conduct for Judges and

Associate Judges." (Ill. Const. 1970, art. VI, sec. 13(a).) Section 15(c)(1) of the judicial article provides that the Board has the authority to file a complaint with the Commission when five or more of its nine members believe that a reasonable basis exists "to charge the Judge or Associate Judge with willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute." (Ill. Const. 1970, art. VI, sec. 15(c)(1).) Pursuant to its procedural rule-making authority, the Board has promulgated Rule 4(c), which provides:

> "In determining whether a reasonable basis exists, the Board may be guided by (but shall not be limited to) the Standards of Judicial Conduct adopted by the Supreme Court of Illinois (Rule 61), and the rules of the Supreme Court (Rules 62 through 71) related thereto."

As noted above, the Board acknowledges that our rules are a source of judicial standards upon which a complaint may be based, but it asserts that such rules are not the exclusive source. Specifically, the Board argues that any conduct which it considers to be willful misconduct in office, conduct prejudicial to the administration of justice, or conduct that brings the judicial office into disrepute may be the subject of a complaint, regardless of whether that conduct violates this court's rules.

An examination of the 1970 constitutional convention's debates and committee reports discloses a surprising lack of discussion concerning the interrelationship of sections 13(a) and 15(c)(1). The absence of discussion, however, might in part be due to the well-recognized role this court had in judicial disciplinary matters prior to 1970. For this reason, we must examine the judicial disciplinary system that existed prior to 1970. For an extensive discussion, see Cohn, *The Illinois Judicial Department—Changes Effected by Constitution of 1970,*

1971 U. Ill. L.F. 355, 374-88; Braithwaite, *Judicial Misconduct and the Evolution of the Illinois Courts Commission 1964-1970*, 1969 U. Ill. L.F. 442.

Prior to 1964, the 1870 Constitution had provided two seldom-used methods for removing judges from office during their term: impeachment (Ill. Const. 1870, art. IV, sec. 24, and art. V, sec. 15) and concurrent resolution of the Senate and House (Ill. Const. 1870, art. VI, sec. 30). Due to the inadequacy of these two methods, the 1964 judicial article adopted provisions for the establishment of a judicial disciplinary commission (Ill. Const. 1870, art. VI (1964), sec. 18). The commission was subject to the rules of procedure promulgated by this court and was to be convened only upon order of the chief justice or the Senate. (Ill. Const. 1870, art. VI (1964), sec. 18.) Pursuant to section 18 of the 1964 judicial article, this court promulgated Rule 51 (36 Ill. 2d R. 51), which established the Illinois Courts Commission and prescribed the procedure by which the commission was to receive and hear complaints. Specifically, Rule 51(b) provided:

> "If the Supreme Court determines there is reason to convene the commission, or upon request of the Senate, the Chief Justice shall order the commission to convene." (36 Ill. 2d R. 51(b).)

The commission, therefore, was virtually subject to the complete discretion and control of this court.

Within a few years, it was recognized that the constitutional provisions were structurally and procedurally inadequate in that the commission had no authority or continuity of existence, and it lacked the administrative, investigative and enforcement staff necessary for its efficient operation. In June of 1969, a special joint committee of the Illinois and Chicago bar associations recommended revisions to Rule 51, and those recommendations were adopted by this court. (43 Ill. 2d R. 51.) The revised Rule 51 provided that the commission

be convened on a permanent basis. It assigned the Director of the Administrative Office of the Illinois Courts as permanent secretary for the commission with specified powers to receive and investigate charges and to direct the filing of complaints, and it also established procedures for hearing of the charges. The commission, however, was still subject to this court's supervision by virtue of the rule-making authority of the court.

Several months later, in *Cusack v. Howlett* (1969), 44 Ill. 2d 233, an action which challenged the legislature's authority to promulgate standards of judicial ethics, the court held that, pursuant to the judicial article of 1964, the exclusive authority to prescribe standards of judicial conduct rested with the supreme court. *Cusack* was a clear and unambiguous recognition of this court's authority to regulate the conduct of judges, on and off the bench. Shortly thereafter, a special committee was formed by this court to develop extensive standards for judicial conduct and ethics. On January 30, 1970, this court, by order, adopted the rules recommended by that committee. (43 Ill. 2d Rules 61 through 71.) These rules and standards, in large part, are the same rules and standards in effect today. See 65 Ill. 2d Rules 61 through 71.

Against this background, the constitutional convention's Committee on Judiciary (Committee) considered the future interrelationship of the judicial disciplinary system and this court's authority to determine the rules of judicial conduct.

Recognizing the need to maintain an independent judiciary, the Committee recommended that this court, through its rule-making authority, continue to have the power to promulgate the rules of conduct by which all judges would be guided. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 830-33 (Proceedings).) The Committee expressly concurred with the ruling in *Cusack* on this point and noted that it followed the "long

standing tradition of internally imposed professional standards upon the entire legal profession." (6 Proceedings 831.) The Committee specifically observed the following:

"It should be noted that the Supreme Court, on January 30, 1970, adopted an order containing standards of judicial conduct and rules relating to non-judicial activities and interests, which it has been said, are the most comprehensive and all-inclusive limitations upon any judicial officers in this country. They were based upon a report of a special committee of distinguished lawyers, chaired by Dean John E. Cribbet of the University of Illinois College of Law. That report, as well as other professional judgment, views the principle of judicial self-regulation as essential to the integrity and independence of the judiciary. With that conclusion this Committee agrees." (6 Proceedings 833.)

After rejecting an attempt to vest the rule-making authority in the legislature (2 Proceedings 948), the convention delegates unanimously adopted the Committee's recommendation (2 Proceedings 960). This court was thereby vested with the exclusive authority to promulgate rules of judicial conduct for the judges of this State.

With respect to the judicial disciplinary system's investigative, prosecutorial, and adjudicative functions, the Committee and convention delegates expressly indicated that this court was to have no involvement. Two Committee proposals dealing with the judicial disciplinary system were submitted to the delegates. (6 Proceedings 849.) The majority proposal which, with minor revisions, became section 15 of article VI, took the position that, unlike the pre-1970 Courts Commission, an effective disciplinary system required that the prosecutorial and investigative functions be separate from the adjudicative function. (6 Proceedings 872-73.) The majority proposal therefore recommended the establishment of the Judicial Inquiry Board, which would receive or initiate complaints concerning any judge, conduct investigations, and file com-

plaints with the Commission. (6 Proceedings 866.) Unlike the prior Courts Commission, the Board is completely independent of this court and its administrative director and staff. It has the authority to promulgate its own rules of procedure, appoint and direct its staff, and issue subpoenaes. Its budgetary appropriation is fully independent from that of this court. (Ill. Const. 1970, art. VI, sec. 15(d).) Under the majority proposal, the present Courts Commission was designed to perform the adjudicative function. Although it was initially recommended that this court prescribe the rules of procedure under which the Commission would operate, that recommendation was rejected by the delegates, and the Commission was thereafter vested with the authority to determine its own rules of procedure. (2 Proceedings 1189-90.) Also, as earlier noted, it was provided that the Commission's decisions be final and nonreviewable.

The minority proposal favored divorcing this court from any part of the adjudicative, prosecutorial, and investigative functions, but it strongly opposed the creation of a Judicial Inquiry Board. It charged that the creation of the Board, consisting of lawyers, judges and laymen, would erode public confidence in the judiciary "by enshrining in the Constitution a mechanism which clearly establishes a presumption that judicial officers cannot be trusted and that there must be a continuing, ongoing surveillance of the judicial system by an investigative body whose sole and only responsibility is to receive, initiate and investigate complaints against judicial officers." (6 Proceedings 915.) It was feared that the Board would become inquisitorial and accusatorial in a manner wholly unwarranted by the circumstances, and that great injustice would result from placing in the hands of laymen, not conversant with the factors and criteria by which complaints should be evaluated, the power to render judgment. 6 Proceedings 913, 916.

In answer to the minority's expressed fears, the majority proposal stated that, by requiring the Board to focus on the standards set forth in section 15(c)(1) to determine whether the evidence warranted the filing of a complaint, the Board would become neither inquisitorial nor improperly accusatorial. (6 Proceedings 870.) The majority proposal specifically stated:

> "Indeed the Committee envisions the informal resolution of many complaints by understandings reached with the judge or magistrate which are adequately remedial and where there will be no cause to proceed to a formal complaint. In these, as in other instances, the standards will be both helpful and necessary." (6 Proceedings 871.)

Significantly, the majority proposal further noted that, although the standards appeared general, the canons of judicial ethics, implemented by the courts, give judicial officers adequate notice of the kinds of conduct proscribed. 6 Proceedings 871.

The standards set forth in section 15(c)(1) were not intended to serve as the grounds upon which a complaint would originate, as suggested by the Board herein, but, rather, were intended to serve only as a guide to the Board in determining whether an alleged violation of rules warranted the filing of a formal complaint. The grounds for a complaint are to be found within the framework of this court's rules of judicial conduct, while the determination of whether the evidence warrants the filing of a complaint rests with the Board. As quoted above, the Committee recognized that not all technical violations warrant the filing of a formal complaint, and the Board, as well as the Commission, were given stringent standards to assist them in determining when rule violations deserve discipline. (See also 65 Ill. 2d R. 62, which recognizes inadvertent violations may be too insignificant to call for official action.) Also, as noted above, the Committee recognized that, absent rules defining the conduct which is

subject to discipline, the standards, standing alone, could be subject to a constitutional attack on grounds of vagueness. The reality of this possibility was presented in *Halleck*. There the plaintiff argued that the phrase, "conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute," was unconstitutionally vague and overly broad. The court rejected this contention for the following reason:

"The provisions of section 11–1526(a)(2)(C) do not stand alone. The ABA Code of Judicial Conduct has been adopted by the Joint Committee on Judicial Administration in the District of Columbia. The Canons of that Code supply judges with ethical standards expected of them. Arguments in other jurisdictions that constitutional and statutory provisions for the discipline of judges were vague or overbroad have been rejected primarily on the ground that the Code of Judicial Conduct furnished sufficient specification of the judicial conduct which warrants disciplinary action. [Citations.] In the case at bar, the Commission's 'Notice of Formal Proceedings,' stated that plaintiff's alleged conduct would, if proved, violate Canons 2A and 3A(3) of the Code of Judicial Conduct. This court concludes that the provisions of section 11–1526(a)(2)(C) are supplemented by the Code of Judicial Conduct, and so supplemented are not unconstitutionally vague or overbroad in violation of the Due Process Clause." (*Halleck v. Berliner* (D.D.C. 1977), 427 F. Supp. 1225, 1240.)

Here, as in *Halleck,* absent the adoption of rules defining the conduct which is subject to discipline, the standards, standing alone, could be subject to a successful constitutional attack. The Committee recognized the need for greater specificity, and deliberately referred judicial offi-

cers to the court-adopted rules on judicial conduct. If judicial officers are to rely on the rules for guidance, then disciplinary actions should be limited to the conduct that violates the rules' expressed requirements and prohibitions.

Not only do we believe that this construction of section 15(c)(1) is completely consistent with the delegates' intent, but we feel that any other construction would effectively nullify section 13(a) of article VI, eliminate the decision-making function which the delegates unanimously intended this court to have, and jeopardize the integrity and independence of the judiciary which the delegates sought to protect. The Board has cited this court to no debates which indicate a contrary intent, and our research has disclosed none.

Accordingly, we hold that only conduct violative of the Supreme Court Rules of judicial conduct may be the subject of a complaint before the Commission.

Turning then to the charges set forth in the complaint, we note that the Commission dismissed the charges based on the Micheletti case; consequently, that charge is not before us. As to the Whelan case, the Commission made no separate finding pertinent to this order but, rather, grouped it with all the other haircut orders. Thus, even if the Commission was without jurisdiction to entertain that portion of the complaint based on the order issued in the Whelan case, we cannot, under these circumstances, reverse the Commission's entire order on that charge alone. We must, therefore, consider the validity of the Commission's decision with respect to the other orders.

The petitioner asserts that because his conduct involved nothing more than an erroneous interpretation of a statute and the entry of orders pursuant to that interpretation, the Commission was without jurisdiction. He argues that acts of this nature are immune from discipline by virtue of either the common law doctrine of judicial immunity or its underlying policy considerations, and that

relief from such an erroneous decision is available only through the normal appellate process.

The fact that a judge's misconduct may be remedied by the appeal of an individual defendant does not prevent the same conduct from being the subject of a disciplinary action. Although all misconduct arising during the course of a judicial proceeding may be the subject of an appeal, an individual defendant's vindication of personal rights does not necessarily protect the public from a judge who repeatedly and grossly abuses his judicial power.

We reject any notion that merely because an act is committed while an individual is performing in a judicial capacity the doctrine of judicial immunity is automatically applicable. Much reliance is placed on this court's holding in *In re McGarry* (1942), 380 Ill. 359, wherein it was held that a judge is immune from attorney disbarment proceedings for what the court there viewed as errors of judgment committed while acting in a judicial capacity. That decision, however, was limited to attorney disciplinary proceedings being brought against a judge and did not apply to judicial disciplinary proceedings pursuant to constitutional mandate, as in this case.

We agree with the petitioner's general assertion that to maintain an independent judiciary mere errors of law or simple abuses of judicial discretion should not be the subject of discipline by the Commission. (*Cf. In re Judges of Cedar Rapids Municipal Court* (1964), 256 Iowa 1135, 1136, 130 N.W.2d 553, 554; *In re Rome* (1975), 218 Kan. 198, 205, 542 P.2d 676, 684; *In re Troy* (1973), 364 Mass. 15, 39-40, 72, 300 N.E.2d 159, 173, 191; *Murtagh v. Maglio* (1960), 9 App. Div. 2d 515, 520, 195 N.Y.S.2d 900, 905; *Mahoning County Bar Association v. Franko* (1958), 168 Ohio St. 17, 30, 151 N.E.2d 17, 27; *In re Laughlin* (1954), 153 Tex. 183, 188, 265 S.W.2d 805, 808.) But "not every act of a judge done in the performance of his duty is an act of judicial discretion."

(*In re Rome* (1975), 218 Kan. 198, 206, 542 P.2d 676, 684.) Specifically, where the law is clear on its face, a judge who repeatedly imposes punishment not provided for by law is subject to discipline by the Commission pursuant to Supreme Court Rules 61(c)(18) and 62 (65 Ill. 2d Rules 61(c)(18), 62), regardless of whether he believes the form of punishment will have a beneficial corrective influence. Petitioner was charged with violating Rule 61(c)(18). He was not charged with erroneously interpreting a statute. Thus, the issue before the Commission was whether petitioner imposed punishment with authority of law as he alleged, or whether he grossly disregarded legal limitations which then existed and imposed punishment not provided for by law. The subject matter of the charge against petitioner was, therefore, clearly within the jurisdiction of the Commission.

Petitioner contends, however, that even if the Commission had subject matter jurisdiction, it exceeded its constitutional authority when it rejected the petitioner's interpretation of section 5—6—3(b) (a section which, prior to *Dunn*, had never received a reviewing court's interpretation), and, instead, made its own independent judicial interpretation, thereafter evaluating petitioner's orders in light of its own statutory interpretation.

The Commission rejected petitioner's literal interpretation of section 5—6—3(b) and concluded, without citation of authority, that a "sensible construction" required that any additional conditions be directed toward rehabilitation, be reasonably related to the offense for which the probation is being imposed, and not be unduly restrictive of personal liberty. The Commission recognized the possibility that a reviewing court might reach a different conclusion, but it, nevertheless, evaluated the petitioner's conduct in light of its own "sensible construction."

As earlier noted, the judicial power in this State is

vested solely in the courts. This power includes, among other things, the authority to judicially interpret and construe constitutional provisions and statutes when necessary. (*People v. Bruner* (1931), 343 Ill. 146, 157-58; *Fergus v. Marks* (1926), 321 Ill. 510, 514; *People ex rel. Vanderburg v. Brady* (1916), 275 Ill. 261, 263.) Inasmuch as the Commission is not a part of the tripartite court system in this State, it possesses no power to interpret statutory ambiguities or to compel judges to conform their conduct to any such interpretation. This limitation is particularly dictated inasmuch as this court is without the authority to review the correctness of the Commission's orders. To interpret the Constitution as granting the Commission such power would do violence to the intended constitutional scheme of government in this State. To grant the Commission such authority would interfere with an independent judicial system and would place trial judges in an untenable position. If, as here, the statutory interpretation of the Commission differed from that of the appellate courts, trial judges who followed, as mandated, the guidance of the courts of review, would be subject to sanction by the Commission. The "framers of the constitution sought to promote certainty and uniformity in the interpretation and declaration of the law. To that end they committed the exercise of these judicial functions to the judicial department." *People v. Bruner* (1931), 343 Ill. 146, 159.

The function of the Commission is one of fact finding. Its function in this case was to apply the facts to the *determined* law, not to determine, construe, or interpret what the law should be. We find that the Commission exceeded its constitutional authority when, in determining whether petitioner's orders were without authority of law, it applied its own independent interpretation and construction of section 5—6—3(b) to the petitioner's conduct. Inasmuch as the Commission's order was in part premised

on that interpretation, we hold the suspension order to be void.

Accordingly, a writ of *mandamus* is ordered to issue against the members of the Courts Commission directing them to expunge the suspension order from their records.

*Writ awarded.*

UNDERWOOD and GOLDENHERSH, JJ., took no part in the consideration or decision of this case.