KNOLL, J.
| ,This matter comes before us on the recommendation of the Judiciary Commission of Louisiana (the “Commission”) that Respondent, Judge Janice Clark, of the 19th Judicial District Court, Parish of East Baton Rouge, be publicly censured for an alleged ethical violation and be ordered to reimburse the Commission the costs incurred in the investigation and prosecution of this matter. The Commission conducted an investigatory hearing, made findings of fact and of law, and determined that the Respondent violated Canons 1, 2A, and 3A(1) of the Code of Judicial Conduct, concluding that Judge Clark’s actions in Ms. Reed’s case constituted an egregious legal error sufficient to rise to the level of judicial misconduct for which a judge may be publicly disciplined under Article V, Section 25(C) of the Louisiana Constitution. After thoroughly reviewing the record before us, we disagree with the Commission’s conclusions and reject its recommendation of discipline.
FACTUAL BACKGROUND
The complaint forming the basis of the Formal Charge now before us was lodged with the Commission by Marie Reed, who appeared before Judge Clark as the plaintiff in Marie Reed v. East Baton Rouge Sheriff Dept, No. C592351, 19th Judicial District Court, Division “D,” Parish of East Baton Rouge. Specifically, the | ^Formal Charge at issue centers on a colloquy which took place in open court between Judge Clark and Ms. Reed while *263 Ms. Reed’s lawyer was absent and on Judge Clark’s order dismissing Ms. Reed’s suit without prejudice after Ms. Reed was unable to prove her eligibility to proceed in forma pauperis. In order to understand the nature of this charge, it is necessary to understand what transpired in the Reed proceedings.
Ms. Reed initiated Reed when she filed a petition pro se on July 7, 2010, seeking damages for allegedly false and defamatory statements made about her by the defendants. With this petition, Ms. Reed filed an affidavit requesting the court’s leave to proceed to forma pauperis. Judge Clark signed an order granting Ms. Reed pauper status on July 9, 2010.
On January 12, 2011, defendants sought to traverse Ms. Reed’s pauper status, contending that she had sufficient net monthly income to pay court costs and that she had abused the legal system by filing five lawsuits in a one-month period. Although Ms. Reed had proceeded in proper person up until this point, Jarrett Ambeau filed a motion to enroll as counsel of record on January 20, 2011. Even after obtaining counsel, Ms. Reed was not discouraged from attempting to act as her own attorney. Mr. Ambeau testified before the hearing officer in the instant disciplinary matter that he himself did not always know whether Ms. Reed was acting as a lawyer or as a client: “She acted like an attorney a lot by filing her own motions, by going to the clerk’s office, by going to the judge’s office. I mean, she — I actually had to specifically instruct Ms. Reed to stop going to the courthouse on her own because she did that a lot.”
Notably, even after Mr. Ambeau enrolled as counsel, Ms. Reed filed pro se a “Motion to Schedule Hearing.” Mr. Am-beau testified at a deposition, noticed by counsel for Judge Clark at which all counsels of record were present, that he had no idea she was filing this motion and he had never before seen the document. |sAlso, notable, is the “Objection to Transfer of Pauper Status” filed by Ms. Reed on January 31, 2011. Although Ms. Reed filed this response without Mr. Ambeau’s knowledge after she had retained him to represent her, Mr. Ambeau later cited the pro se filing in his March 22, 2011 answer to, inter alia, defendants’ motion to deny plaintiffs pauper status, referring to Ms. Reed’s pro se response as a “submission that is sufficient to answer any challenge to her pauper status.”
At a hearing on February 16, 2011, on defendants’ motion to rescind pauper status and exceptions of lack of procedural capacity, no cause of action, vagueness, and ambiguity,[1] Judge Clark sustained defendants’ exceptions, but gave Mr. Ambeau seven days to attempt to amend the defects in the petition. Over the objection of defense counsel, Judge Clark also gave the plaintiff ten days to file an updated to forma pauperis affidavit.
Following this hearing, Mr. Ambeau failed to file this amended petition within the seven day time period ordered by Judge Clark. Further, although Mr. Am-beau instructed Ms. Reed to file an updated pauper affidavit with the court, the court received no updated affidavit from Ms. Reed within the time alotted. On March 9, 2011, defendants filed a motion to revoke Ms. Reed’s pauper status and to strike her petition for damages. Judge Clark set the motions for hearing on April 11, 2011. Mr. Ambeau moved to continue this hearing, and Judge Clark granted the *264 motion, continuing the hearing until April 18, 2011.
In the interim, Mr. Ambeau moved to stay the proceedings on March 22, 2011, arguing judicial economy and the interests of justice militated in favor of a stay as the plaintiffs civil claim was based on the same events and related facts as a criminal action which was then pending against Ms. Reed. On March 24, 2011, Judge Clark denied this motion on the showing made.
At the outset of the hearing on April 18, 2011, Judge Clark denied ^defendants’ motion to strike, finding Mr. Ambeau’s filing of the petition one day late did not prejudice the defendants and commenting that striking the petition “would certainly reek at the very heart of justice.” Turning to the defendants’ challenge of Ms. Reed’s pauper status, Judge Clark noted Ms. Reed had failed to properly update the affidavit concerning her finances. Mr. Ambeau acknowledged his client may have misunderstood what she was supposed to file and requested another opportunity to complete an updated affidavit. Over the objection of defense counsel, Judge Clark granted Ms. Reed a further extension:
[A]n additional twenty-four hours in which to file a full and complete affidavit with the clerk, with the court, and with opposing counsel. Thereafter, the court will render its decision based on the evidence before it. If there’s any information to the contrary that you have, counselor, that you bring to the attention of the court, the court will likewise consider it.
Mr. Ambeau then mentioned he had a motion to stay he wished to file. Judge Clark instructed Mr. Ambeau to file a formal motion to stay with the clerk of court and indicated she would take up the issue of the stay when she considered the pauper affidavit the following day:
THE COURT: The court will take up the motion to stay on tomorrow when it takes up the forma pauperis status. There will be no additional notice.
MR. AMBEAU: Thank you, Your Hon- or. Your Honor, what time is that proceeding tomorrow? 1 o’clock?
THE COURT: Whenever I get to it. No, it might be earlier than that.
MR. AMBEAU: Thank you, Your Hon- or.
After the April 18th hearing was concluded, Mr. Ambeau remembered he had a scheduling conflict and was required in court in Ascension Parish the following morning. After informing opposing counsel of this conflict, Mr. Ambeau told an unidentified male member of Judge Clark’s staff that he would be running late the following day. He did not, however, speak personally with Judge Clark or file a formal motion to continue. Instead, he instructed Ms. Reed to be in Judge IsCIark’s courtroom at 9:00 a.m. the following day — April 19, 2011 — as he was concerned Judge Clark would call the case before he arrived. Mr. Ambeau and Ms. Reed also went to the clerk’s office to file the updated pauper affidavit and the motion to stay, and they delivered these pleadings to Judge Clark’s chambers. Critically, not only was the pauper affidavit filed by Ms. Reed facially defective, as Mr. Ambeau, her attorney, served as the third party affiant in violation of the Louisiana Code of Civil Procedure, see La. C.C.P. art. 5183(A)(2) (requiring the pauper application to include “[t]he affidavit of a third person other than his attorney ... ”), but the motion to stay filed by Mr. Ambeau was also substantively the exact same motion Judge Clark “denied on the showing made” on March 24, 2011.
Later that afternoon, in chambers, Judge Clark reviewed the updated pauper affidavit and the motion to stay. She then *265 signed an order denying the motion to stay and dismissing Ms. Reed’s suit without prejudice.
The next morning, April 19, 2011, Ms. Reed was present in Judge Clark’s courtroom, but neither Mr. Ambeau nor defense counsel was present. At 10:07 a.m., Judge Clark asked her clerk to call the docket, and Ms. Reed’s case was the first matter called. The following exchange took place on the record:
THE COURT: All right. Where is the lawyer?
MS. REED: He’s still in court. He’s on his way. He told y’all he had a pleading this morning. So he told me to make sure I’m here.
THE COURT: He had a what?
MS. REED: Pleading this morning. He had told the court yesterday that he — that he had a pleading this morning, and he is coming as soon as he finished because we never had a time. We never knew what time so that’s why I came at 9:00. We did everything yesterday, the pauperis form before we left, and I brought that in this morning, too, to add with the pauperis form. We did the pauperis form, him and I, before we left, the affidavit before we left the courthouse.
THE COURT: Well, this one is the same.
|fiMS. REED: No, he walked it through yesterday to your office.
THE COURT: Is there an additional—
MS. KNIGHT [Judge Clark’s employee]: That was on your desk this morning.
THE COURT: This?
MS. KNIGHT: Yes. And you — this was where you denied—
THE COURT: All right.
MS. KNIGHT: If you look at it, and that was attached to it, the pauper thing.
THE COURT: All right.
MS. KNIGHT: That was just laying on my desk.
THE COURT: What is your total monthly income?
MS. REED: $768 — Actually, they decreased it, but it’s $768 a month for disability, and I am on six breathing treatments a day. So the medicine— that’s why I gave you—
THE COURT: I’m asking you about your income, ma’am.
MS. REED: Oh, $768. They decreased it to $674 this last month.
THE COURT: $674.
MS. REED: They just decreased it because I got to now pay for Medicare because Medicaid couldn’t cover it.
THE COURT: And your car note is $360?
MS. REED: Yes, ma’am, a month.
THE COURT: You pay a car note every month?
MS. REED: Yes, and insurance. I have to pay insurance.
THE COURT: And you’re asking this Court to stay these proceedings?
MS. REED: Yes, ma’am.
THE COURT: What would be the point in staying them?
MS. REED: Because the law allow— because of my Fifth Amendment right because of that criminal proceeding. I would incriminate myself with the criminal proceedings.
|7THE COURT: All right. Well, what I would do is I will go ahead and dismiss the claim without prejudice so you can refile it at any time.
MS. REED: Okay.
THE COURT: All right. Thank you.
Shortly after the conclusion of the above colloquy, Mr. Ambeau arrived at the court *266 house and learned of the dismissal. Mr. Ambeau testified both he and Ms. Reed were upset by what had occurred but, in his view, Judge Clark had not been discourteous or insulting and had not interfered with the attorney-client relationship between him and Ms. Reed.
The next day, April 20, 2011, Ms. Reed promptly re-filed her suit in proper person under a new docket number.
PROCEDURAL HISTORY
Ms. Reed filed a complaint with the Office of Special Counsel (“OSC”) against Judge Clark, alleging, inter alia, that Judge Clark had acted wrongfully in addressing her on the record on April 19, 2011 without her lawyer present. On June 14, 2011, the OSC forwarded Ms. Reed’s complaint to Judge Clark and requested that Judge Clark respond to Ms. Reed’s allegations. Cooperating with this request, Judge Clark submitted a brief, informal letter in which she addressed Ms. Reed’s allegations, but did not detail with specificity all of her actions on April 19, 2011. On May 22, 2012, the Judiciary Commission filed a Formal Charge against Judge Clark, alleging Judge Clark violated Canons l,[2] 2A,[3] and 3A(1)[4] of the Code of Judicial Conduct and engaged in willful misconduct relating to her | sofficial duty in violation of the Louisiana Constitution, Article V, Section 25(C), when she “questioned Ms. Reed about issues under the Motion to Stay and the Motion for Forma Pauperis Status, which were the reasons for the hearing and therefore dealt with substantive matters or issues on the merits.”
A hearing was held on April 12, 2013, at which time Judge Clark fully explained her actions on April 19, 2011. Although she agreed that during the April 18, 2011 hearing she had left the record open for twenty-four hours so that Ms. Reed could submit an updated pauper affidavit, Judge Clark denied she had any intention of having any further hearing in the matter other than “to look at whatever affidavit was submitted,” which in fact she did in her chambers on the afternoon of April 18, 2011. After reviewing the updated affidavit and finding it to be facially defective, Judge Clark signed an order dismissing Ms. Reed’s case without prejudice.[5] Judge *267 Clark testified that, on April 19, 2011, she intended only to announce the prior day’s ruling on the record in order to memorialize it in the court minutes — a process Judge Clark called “spreading the minutes” of the case. Although Judge Clark did provide the parties with record notice on April 18, 2011, she did not necessarily expect anyone to be there.[6] Judge Clark defended her brief questioning of Ms. Reed outside of her lawyer’s presence by noting she was simply considering whether or not she should vacate the order she had signed on April 18, 2011, dismissing the case without prejudice. Judge Clark also observed Louisiana Code of Civil Procedure article 5183(B) requires the trial court to “inquire into the facts” before deciding whether to grant a litigant the privilege of proceeding as a pauper. Concerning her questions to Ms. Reed about the motion to |sstay filed by Mr. Ambeau, Judge Clark testified that although she had already denied the motion and dismissed Ms. Reed’s case, she “reserved an opportunity to vacate my ruling on reconsideration.”
Following a hearing on this matter, the hearing officer proposed a number of factual and legal conclusions to the Commission. Among these conclusions was the following:
[T]he hearing officer cannot conclude that Judge Clark engaged in willful misconduct relating to her official duty in violation of La. Const. Art. V, § 25C. Judge Clark thought her actions were of assistance to Ms. Reed. Further, Ms. Reed’s status as a litigant was somewhat ambiguous because she filed many pleadings pro se even when she was represented by an attorney. Mr. Am-beau basically left Ms. Reed to her own devices in connection with her pauper status because he was admittedly uncomfortable with that status since he stood to gain financially from the Lawsuit. Due to this unusual set of circumstances, the hearing officer does not find intentional or willful misconduct.
In making its recommendation to this Court, the Commission specifically rejected the hearing officer’s finding Judge Clark did not act willfully or intentionally. Instead, the Commission issued “Findings of Fact, Conclusions of Law, and Recommendation of Discipline” indicating its position that the Formal Charge had been proven by clear and convincing evidence and that Judge Clark’s conduct on April 19, 2011 constituted a violation of Canons 1, 2A, and 3A(1) of the Code of Judicial Conduct. The Commission recommended that Judge Clark be publicly censured and ordered to pay the costs associated with the investigation and prosecution of this matter.
DISCUSSION
This Court has original jurisdiction in judicial disciplinary proceedings. La. Const, art. V, § 25(C). Therefore, this Court has the power to make original determinations of fact based upon the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re Quirk, 97-1143, pp. 3-4 (La.12/12/97), 705 So.2d|10172, 176. The grounds for disciplinary action against a judge are set forth in Article V, Section *268 25(C) of the Louisiana Constitution which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during the pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
Under our supervisory authority over all lower courts, this Court adopted the Code of Judicial Conduct, effective January 1, 1976. The Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as the basis for the disciplinary action provided for by Article V, Section 25(C) of the Louisiana Constitution. Quirk, 97-1143 at 4, 705 So.2d at 176; In re Marullo, 96-2222, p. 3 (La.4/8/97), 692 So.2d 1019, 1021; In re Decuir, 95-0056, p. 7 (La.5/22/95), 654 So.2d 687, 692. The standard of proof in judicial discipline cases is the clear and convincing standard. Quirk, 97-1143 at 4, 705 So.2d at 176; In re Johnson, 96-1866, p. 7 (La.l1/25/96), 683 So.2d 1196,1199; In re Huckaby, 95-0041, p. 6 (La.5/22/95), 656 So.2d 292, 296. This standard requires that the level of proof supporting the Commission’s factual findings must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt. Id.
The Commission found Judge Clark violated Canons 1, 2A, and 3A(1) of the Code of Judicial Conduct. Specifically, the Commission alleges Judge Clark committed judicial misconduct (1) by questioning Ms. Reed outside the presence of her attorney and (2) by dismissing Ms. Reed’s claim without a proper legal |nbasis. Underlying both of these allegations is the assertion Judge Clark committed legal error on April 19, 2011. As we recognized in In re Quirk,
Our three-tiered system of judicial review necessarily exists, in part, to reverse legal errors made below. In this manner, the vast majority of legal errors are more properly addressed on appeal and do not amount to judicial misconduct. Where mere legal error is involved, “the disciplinary process should not be used as a substitute for appeal.” Jeffrey M. Shaman, Judicial Ethics, 2 Geo. J. Legal Ethios 1, 8 (1988); Judicial Conduct and Ethics, supra, § 2.02 p. 32 (“[T]he usual safeguard against error or overreaching lies in the adversary system and appellate review.”). In order to maintain an independent judiciary, mere errors of law or simple abuses of judicial discretion should not amount to judicial misconduct. Harrod v. Illinois Courts Commission, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53, 65 (1977).
97-1143 at 7, 705 So.2d at 178. However, as we also acknowledged in Quirk, “[a] singe instance of serious, egregious legal error, particularly one involving the denial to individuals of their basic or fundamental rights, may amount to judicial miscon *269 duct.” Id. at 8, 705 So.2d at 178. Ever mindful of the need to carefully balance the dual purposes of preservation of the independence of the judiciary and protection of the public from the abuse of judicial power, we have held “a judge may be found to have violated La. Const. Art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error.” Quirk, 97-1143 at 11-12, 705 So.2d at 180-81.
Neither the Commission nor the facts presented to us suggest Judge Clark acted in bad faith on April 19, 2011. Further, there is no suggestion Judge Clark’s conduct was part of a pattern or practice of legal error. Therefore, the only question before us is whether any of Judge Clark’s conduct on April 19, 2011 constituted egregious legal error warranting this Court’s sanction under Quirk.
First, the Commission argues, by questioning Ms. Reed outside the presence of her attorney, Judge Clark failed to uphold high standards of conduct in order to 1 ^preserve the integrity of the judiciary, in violation of Canon 1; failed to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A; and failed to be faithful to the law and to maintain professional competence in it, in violation of Canon 3A(1). We disagree. As the hearing officer correctly acknowledged in her findings, there is no Louisiana authority prohibiting a judge from speaking to a civil litigant when the civil litigant’s lawyer fails to appear in court after notice. Thus, on its face, the unclear and undetermined nature of this question makes Judge Clark’s conduct unworthy of sanction. Quirk, 97-1143 at 11-12, 705 So.2d at ISO-81.
Further, contrary to the Commission’s assertions, the record clearly establishes Judge Clark’s exchange with Ms. Reed did not interfere with her attorney-client relationship with Mr. Ambeau. The Commission goes to great lengths in its attempt to characterize the brief colloquy on April 19, 2011 between Judge Clark and Ms. Reed as a “hearing” which occurred outside of the presence of Ms. Reed’s lawyer. While we believe the transcript of the April 18, 2011 proceeding is consistent with Judge Clark’s testimony that she had no intention of conducting any kind of hearing the following day, we find this debate over whether or not a “hearing” occurred on April 19, 2011, to be completely irrelevant under the facts before us. However one characterizes the exchange which occurred between Judge Clark and Ms. Reed, we find Judge Clark did nothing warranting sanction from this Court when she addressed Ms. Reed on April 19, 2011. Indeed, as the hearing officer found, Ms. Reed had an unusual history of continuing to act many times as her own lawyer, even after Mr. Ambeau enrolled as her counsel of record. Mr. Ambeau himself testified he was often not sure whether Ms. Reed was acting as a client or as a lawyer. The record shows Ms. Reed even went so far as to file a pro se “Motion to Schedule Hearing” without Mr. Ambeau’s knowledge. | ^Although Mr. Ambeau seemed frustrated with Ms. Reed’s persistent attempts to interfere with his representation of her, when faced with defense counsel’s charge that plaintiff had not answered defendants’ motion to traverse plaintiffs pauper status, Mr. Ambeau cited a pro se filing Ms. Reed made without his knowledge after he enrolled as her attorney as a “submission that is sufficient to answer any challenge to her pauper status.” *270 From Judge Clark’s perspective, the attorney-client relationship between Mr. Am-beau and Ms. Reed was anything but clear. As the record reflects, Ms. Reed presented herself before the court heedless of her attorney’s advice and of the consequences of her actions, whenever it suited her.
We find because Judge Clark had signed an order dismissing Ms. Reed’s case without prejudice on April 18, 2011, the brief exchange she had with Ms. Reed on April 19th was of no substantive moment. Judge Clark testified, as the written order confirms, that she denied the motion to stay and dismissed the case without prejudice the prior day. She took the bench only to announce her ruling on the record — an oral entry which would have been made even if no one associated with the case had been present that morning. If Mr. Ambeau wished to be present, it was his responsibility to notify Judge Clark personally of his scheduling conflict or file a motion to continue the matter.[7] We find it is clear from the record that Judge Clark’s only motivation in speaking with Ms. Reed on April 19th was to help her. Ms. Reed had submitted a facially defective pauper application the prior day and her attorney had submitted substantively the same motion to stay that Judge Clark had previously denied on the showing made. After Mr. Ambeau and Ms. Reed filed the motion to stay and the defective pauper affidavit with the clerk’s office and delivered these documents to chambers, Judge Clark made her decision in chambers to dismiss the case without prejudice on the afternoon of 114April 18, 2011. By questioning Ms. Reed on April 19th, she offered Ms. Reed one more chance — a third chance — to change her mind. Under these circumstances, we find nothing worthy of sanction in Judge Clark’s brief questioning of Ms. Reed.
The Commission also alleges Judge Clark committed ethical misconduct when she dismissed Ms. Reed’s claim without prejudice. Essentially, the Commission argues Judge Clark had no legal authority for dismissing Ms. Reed’s claim because there was no motion to dismiss before her and Louisiana Code of Civil Procedure article 1672[8] provided her with no authority to dismiss the matter sua sponte. Judge Clark testified before the Commission that she dismissed Ms. Reed’s suit without prejudice as a result of Ms. Reed’s failure to qualify for pauper status. Judge Clark’s counsel also pointed out at oral argument that article 5188 of the Louisiana Code of Civil Procedure is silent on what the appropriate remedy is when a judge revokes pauper status in the middle of a case. While we make no judgment as to the propriety of Judge Clark’s actions, we reiterate what we made clear in Quirk: “Where mere legal error is involved, ‘the disciplinary process should not be used as a substitute for appeal.’ ” Quirk, 97-1143 *271 at 7, 705 So.2d at 178 (quoting Jeffrey M. Shaman, Judicial Ethics, 2 Geo. J. Legal Ethics 1, 8 (1988)). Ms. Reed had the right to appeal both Judge Clark’s denial of the privilege to proceed in forma pau-peris and Judge Clark’s dismissal of her case. Both the First Circuit and this Court denied writs on the pauper issue. The appellate courts, not the Judiciary Commission, were the proper arena for this discussion concerning the propriety of Judge Clark’s good faith decision to dismiss Ms. Reed’s case without prejudice for her failure to prove her entitlement to pauper status. Every day, we review the work of judges in the lower courts, and often we exercise our | ^authority to correct legal errors that have been made by the lower courts. This is our function. Based on the record before us, we are fully persuaded that nothing with which the Commission charges Judge Clark warrants this Court’s sanction for judicial misconduct.
RECOMMENDATION REJECTED.

. Notably, this hearing was originally set for February 14, 2011. Mr. Ambeau moved to continue the hearing, Judge Clark granted his motion, and the hearing was continued to February 16, 2011.

. Canon 1 of the Code of Judicial Conduct provides: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.”

. Canon 2A of the Code of Judicial Conduct provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. As used in this Code, ‘impartiality’ or 'impartial' denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge.”

. Canon 3A(1) of the Code of Judicial conduct provides: "A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.”

. During her appearance before the Commission, Judge Clark testified, "Once the in forma pauperis motion is denied, it can’t proceed without payment of costs. It would have to be dismissed.... So at the time, I knew that the case could not proceed without the payment of costs. And she did not preponderate on her right to use the in forma pauperis status, so it had to be dismissed. That’s what I thought. You — there was no need to stay it. It was dismissed without prejudice. And ... as I said, I want to avoid like the plague any suggestion that I violated somebody's Civil *267 Rights because I’ve been a Civil Rights worker all of my life. And if it appears that I violated somebody’s Civil Rights, that is anathema to me. And I am trying to rectify that.”

. Consistent with Judge Clark’s testimony in this regard, defense counsel also testified at the hearing that she did not think her presence was required in court on April 19, 2011.

. As the record evinces, Judge Clark had been very accommodating of Mr. Ambeau’s schedule in the past. Mr. Ambeau testified he could not recall a time when Judge Clark denied a motion to continue he filed. He appeared before Judge Clark twice in this matter. Prior to each appearance, Mr. Am-beau moved to continue the original hearing date, and each time Judge Clark granted his motion.

. Louisiana Code of Civil Procedure article 1672 provides, in pertinent part: "The court, on its own motion, may dismiss an action without prejudice when all the parties thereto fail to appear on the day set for trial; however, when a case has been dismissed pursuant to this provision and it is claimed that there is a pending settlement, either party may reinstate the suit within sixty days of receipt of the notice of dismissal, and any cause of action which had not prescribed when the case was originally filed shall be fully reinstated as though the case had never been dismissed.” La. C.C.P. art. 1672(A)(2).